First case on our call this morning is Rowe v. Raoul, No. 129248. This morning we're told that the athlete will be splitting the time, 10 minutes each, and I'm sure you will be watching the clock closely. To begin, counsel for the appellants, are you ready? Please state your name and begin. Good morning. Deputy Solicitor General Alex Hemmer for the Attorney General, the Governor, and the legislative leaders. The Circuit Court's sweeping decision setting aside the Safety Act's pretrial release provisions should be reversed for two main reasons. First, Article I's bail clause grants defendants the right to seek pretrial release. It does not require the state to maintain the institution of monetary bail. Second, the General Assembly has concurrent constitutional authority to regulate pretrial procedure in Illinois, as it has done for six decades via the Code of Criminal Procedure. The Circuit Court's unprecedented decision rejecting both of those propositions would tie the General Assembly's hands for decades to come, prohibiting it from setting public policy in the area of criminal procedure. Unless the Court has a contrary preference, I'll start with the elimination of monetary bail and then turn to the detention provisions. The Circuit Court reasoned that two separate provisions of Article I, Section 9, which we call the Bail Clause, and Section 8.1, which we call the Crime Victims' Rights Clause, each independently require the state to maintain the institution of monetary bail. That reading of both clauses is wrong. Counsel, I have a question. In the past, we've seen where changes have been made with respect to who is entitled to bail made through constitutional amendments. Why didn't that happen here, and should it have? No, Your Honor, it should not have. The General Assembly was not required to put these changes to the voters in a constitutional referendum. And that's for essentially two reasons. The plaintiff's first argument is about the meaning of the Bail Clause. They say that the Bail Clause had to have been amended in order to do this. That clause provides that, quote, all persons shall be bailable by sufficient sureties, subject to several exceptions. That clause grants criminal defendants a qualified right to seek pretrial release. It makes them bailable. It doesn't require the state to maintain any particular method of obtaining pretrial release, including the system of monetary bail. The elimination of monetary bail is thus consistent with the Bail Clause because it safeguards defendants' rights to seek pretrial release. So the Safety Act did not amend the Constitution? No, it did not. Plaintiff's main argument on that point is that the Act amended several statutory provisions that have the same, that have the same terms as the Constitution. But, of course, the General Assembly is entitled to amend its statutes. The General Assembly didn't purport to amend the Constitution because it didn't need to. The Constitution does not constrain the General Assembly in the way that plaintiffs suggest. Plaintiffs adopt this kind of narrow and artificial reading of the Bail Clause, under which the legislature is required to maintain monetary bail. But that reading can't be squared with text or history or this Court's own precedent. As to text, we explained in the opening brief why, in 1818, when the Bail Clause was first added to the Constitution, in exactly the same format as today, bail meant release, not monetary bail. In fact, in 1818, today's system of monetary bail didn't exist. Instead, sureties were people, friends or family members, who agreed to take charge of a criminal defendant pending trial. And bailable just meant eligible for release on those conditions imposed by a court, as the dictionary definitions we cite on page 18 of the opening brief reflect. Counsel, but what about the 1970 Constitution? The meaning, perhaps, was different, was it not? I'd be happy to talk about the 1970 Constitution. So first, I guess I'd push back a little bit against the premise, because we know from the records of the 1970 Constitution that the drafters made an intentional decision to leave the substance of the Bail Clause unchanged. It says that right there in the report. And so I do think this is a case like Moon and Walker, where the old meaning of the clause at the very least has a kind of strong persuasive effect on the current interpretation of the clause. But even if we want to talk about kind of what the clause meant in 1970, the drafters of the Convention discussed the Bail Clause extensively on the Convention floor. And the overarching theme of that discussion is that the Bail Clause did not constrain the legislature's ability to enact bail reform. It was for that exact reason that the drafters made no changes to the clause. In fact, as we point out in the brief, at one point, one delegate asked the spokesperson for the relevant committee minority whether the General Assembly could abolish monetary bail in the future consistent with the Bail Clause. And the spokesperson says, yes. That view of legislation... The spokesperson said, yes, in my opinion. That's true, Your Honor. He did. Of course, he was speaking for himself, you know. But no other member of the Convention, you know, spoke up to say, hey, that's not true. That's not right at all. And in any event, you know, plaintiffs don't grapple with the kind of reason that the Bail Clause was left unchanged, which was that the del... which was the delegate's view that these decisions should be left to the legislature. That view can't be squared with plaintiffs' highly restrictive reading of the clause. This Court's precedent compels the same conclusion. In fact, the Court has addressed a version of this question before in the 1960s. The 1963 Code of Criminal Procedure essentially abolished one specific form of surety, namely the unsecured corporate surety bond, which was perhaps the dominant form of obtaining pretrial release at that time. And that, too, was challenged in the courts using the exact same argument plaintiffs are making, that the Bail Clause required corporate bonds to be available to courts and defendants because those bonds were a kind of surety. And the Court, in the 1966 Gendron opinion, rejected that argument. It deferred to the legislature's public policy determination that corporate bail bonds didn't serve the goals of bail. Now, plaintiffs quibble with that. They say, well, bail bonds didn't secure... serve the goals of bail, but monetary bail does. But the General Assembly has made the opposite decision. And nothing in Gendron or the Bail Clause licenses a court to second-guess that decision and substitute its own policy judgment for the legislature's. I want to briefly point out, though, that the Court could reject plaintiffs' argument without definitively resolving what the word bail meant in 1970 or even in 1818. The Court could hold only that the Bail Clause sets out an individual right that protects criminal defendants a constitutional floor that the legislature is free to exceed. And that's evident from its placement in Article I, which guarantees fundamental rights, and the fact that it is paired with the right to habeas corpus, which is also an individual right belonging to criminal defendants. Understood that way, eliminating monetary bail doesn't violate the Bail Clause because all the General Assembly has done is confer on criminal defendants a statutory right that exceeds the floor set by the Constitution, just as it's done in a wide range of other constitutional contexts, including speedy trial, privacy, and others, which we discuss in the brief. Counsel, having heard that argument, how would that argument apply to the Victims Crimes Victims Amendment from 2014? Because there it talks about actually fixing the amount of bail. Sure. I'm happy to talk about the Crime Victims Rights Clause. So the Crime Victims Rights Clause, on that clause, I think the arguments are a little bit different. So plaintiffs argued below that this clause also requires the state to maintain a system of monetary bail. On appeal, we read plaintiffs to all but abandon that argument because they say, you know, we admit that in 2014, no one intended to require the state to maintain a system of monetary bail. And that concession is clearly right. I mean, the language that the Circuit Court relied on, as you say, was added in 2014. Plaintiffs have included the pamphlet distributed to Illinois voters in connection with that proposed amendment in their supplemental appendix. And as the pamphlet reflects, Illinois voters did not believe in 2014 that they were amending the Constitution to prohibit the legislature from eliminating monetary bail. Nothing in the language of the amendment suggests that it has that effect, and nothing in the pamphlet suggests it either. Now, plaintiffs say, well, it uses the word bail, and it seems to refer in using the word bail to monetary bail, setting the amount of monetary bail. That's true. You know, we don't dispute that. But that doesn't mean that the amendment guarantees the existence of monetary bail. It just grants crime victims certain rights if monetary bail is set. The elimination of monetary bail doesn't require that rule. To use another example, you know, lots of constitutional provisions refer to institutions that no longer exist. The bail clause itself refers to capital offenses. But there are no more capital offenses in Illinois. No one would argue, I think, that the bail clause requires the State to maintain capital offenses simply by referring to it. And the same is true here. The Crime Victims' Rights Clause, I think, also fails for two other reasons, in addition to plaintiff's concession and the argument that we just discussed. First, the Crime Victims' Rights Clause is unusually clear that it's not meant to expand to the authority of law enforcement officers, and it can be invoked only by crime victims. That means plaintiffs can't enforce it here. Second, there's no conflict between the clause and the pretrial release provisions in any event because, as we discussed, it doesn't guarantee the existence of monetary bail. It just grants crime victims certain rights if monetary bail is set. And the pretrial release provisions preserve those basic rights by requiring courts to consider victims at every stage in determining what conditions, whether to release defendants pending trial and what conditions to impose on them. I'd like to turn... Are you making that in the nature of a standing argument that if someone were to raise this claim in terms of the Crime Victims' Clause that it needs to be a crime victim rather than an estate? So that's your position making that argument? Can you address that question in terms of the separation of powers claim? Who is the aggrieved party in the context of a separation of powers claim? Yes, Justice O'Brien. So as to the first question, yes, we are making a form of standing argument with respect to the Crime Victims' Rights Clause. Now, we aren't arguing across the board that plaintiffs kind of aren't injured in the constitutional sense by the pretrial release provisions. You know, we aren't arguing that the court should toss the entire case. We are invoking the rule that plaintiffs generally have to assert their own rights. They can't assert the rights of third parties like crime victims or criminal defendants. And so that comes up here in the context of the Crime Victims' Rights Clause, and it comes up a couple of other places in the case, too. But we aren't making an across-the-board standing argument, and we aren't making a standing argument that would apply to plaintiffs' separation of powers claim. So as to the separation of powers claim, the separation of powers claim also can't be squared with precedent or history. This court has repeatedly held that the legislature has, quote, to enact public policy in the area of criminal procedure. And that's exactly the case. Ginsburg. Is public policy a factor in the legislature setting parameters for pretrial detention? It is, Your Honor. And I want to be careful I'm not arguing that, you know, this Court should consider the kind of policy merits of the pretrial release provisions. We agree with plaintiffs that that's not before the Court. It's just the constitutional question. But I think it's undeniable that the pretrial release provisions are the amendments made to pretrial release by the Safety Act were motivated by public policy concerns. Is public policy or isn't public policy or determining public policy within the legislature's purview? Absolutely, Justice Cunningham. I mean, that's what the Court essentially says in Walker and in the sentencing cases, is that there are areas, including the Code of Criminal Procedure, where certainly courts have inherent authority, but the legislature has authority too, because the legislature has the power to make these kind of consequential decisions about people's lives. And I think that that is why, you know, the Court says in Walker that when it comes to the Code of Criminal Procedure and the Code of Civil Procedure, the legislature isn't just about the courts. The legislature also has a role to play. Counsel, how do you reconcile these changes with the case law such as the Hemingway case where this Court specifically refers to the fact that the constitutional right to bail must be qualified by the authority of the courts and as an incident of their power to manage the conduct of the proceedings? Aren't you depriving the courts of that power? I don't think so, Your Honor. And I want to address Hemingway. I do want to step back for a brief second and make sure sort of everyone's on the same page about what the detention provisions do. So the detention provisions, you know, essentially do two things. First, they govern when and how a court can detain a defendant pending trial by identifying a range of detention-eligible offenses. The statute identifies over 70 and what a court needs to find to detain a defendant charged with such an offense. Second, the provisions set out a range of conditions that a court can impose on a defendant who hasn't been charged with a detention-eligible crime, including electronic monitoring, home confinement, check-ins with the court or with probation officers, and more. Those provisions do not violate the separation of powers principles that you described. But a court cannot set bail. That's true, Your Honor. A court cannot say you need to post 10 percent of this amount in order to be released. That's true, Your Honor. But I want to be very clear. This Court did not hold in Hemingway that courts have an inherent power to set monetary bail. This Court has never held that courts have an inherent power to set monetary bail. What the Court held in Hemingway was that courts have an inherent, a sort of narrow inherent power to detain a criminal defendant pending trial for three specific reasons that essentially boil down to kind of the control of the courtroom. The chief reason identified in Hemingway is that the court has the power to kind of ensure that the defendant comes back to court for trial. But it doesn't... Can sending monetary bail be considered managing the conduct of the proceedings or preserving the orderly process of criminal procedure? Certainly the Court in Hemingway does not say that, Your Honor. And I guess I would urge the Court not to kind of give Hemingway a sort of expansive reading. We know from the opinion itself that the Court was very careful not to sort of use loose language about a really broad judicial power. The Court goes on to say what we are not endorsing in this opinion is a sort of broad inherent judicial power to detain defendants for public safety reasons, which I think we also kind of tend to associate with court's authority. So the Court in Hemingway itself kind of imposed some boundaries on the scope of its holding. And I think the Court should enforce those boundaries. So, you know, to return to kind of the overall framework for separation of powers challenges in this area, the legislature possesses concurrent constitutional authority to legislate on matters of civil and criminal procedure. The Court said that in Walker and again in the Peterson case. As a result, unless a statute conflicts with a rule of this Court or unduly infringes on judicial authority, it will be upheld. The detention provisions do not conflict with any rule of this Court. In fact, the Court has never, to my knowledge, set comprehensive rules governing pretrial release. That's always been done by the General Assembly. So the only question is whether the detention provisions unduly infringe on judicial authority. And the answer to that question is no. Now, plaintiff's argument, as we've discussed, Justice Holder White, turns entirely on Hemingway. Hemingway recognizes this sort of detention authority, but it does not hold that the legislature couldn't act in this area, and it approved of multiple provisions of the 1963 version of the pretrial release statute. Hemingway clearly envisioned the General Assembly playing an active role in this area. It can't be read to prohibit such a role. In that sense, the detention provisions are just like statutory provisions that require courts to impose particular sentences in particular kinds of cases. This Court has held that courts have inherent judicial authority to impose sentence, but it's also repeatedly held that that authority isn't unduly infringed by mandatory sentencing laws, even though those laws restrict courts' discretion in handling their cases. And the same is the same is true here. The circuit court's contrary decision is clearly wrong on the law. The circuit court reasoned that the General Assembly is expressly prohibited from regulating in this area. Even plaintiffs don't defend that holding. And for good reason. That holding would call into question six decades of legislative reform in this State. The General Assembly has regulated pretrial practices since at least 1963. The 1963 version of the Code did all kinds, made all kinds of changes to bail practices. It required courts to favor release on personal recognizance. It prohibited the use of unsecured commercial bail bonds. It was incredibly detailed. And that's been true for the ensuing six decades. The version of Section 110 that was in place immediately prior to the Safety Act was incredibly detailed. It required courts to consider certain factors. It prohibited courts from imposing detention in certain cases unless certain factual findings were made. These regulations were extraordinarily precise, and they can't easily be distinguished from the statutory reforms enacted by the Safety Act. I know my time is ticking away, and I want to briefly address separability. We've explained in the brief why we think that the court's separability decision was overbroad. Many of plaintiffs' claims go only to one specific provision. For instance, their argument that Section 6.1i's 90-day deadline is unconstitutional or that some specific offense set out in Section 6.1a is a bailable one. But plaintiffs identify no reason that any of these sections was so critical to the passage or operation of the pretrial release provisions that the provisions cannot stand without the section in question. And that's true even of plaintiffs' main argument about Hemingway. Plaintiffs' main argument at the end of the day is that courts should be able to detain individuals at pretrial even in misdemeanor and low-level felony cases. We've explained why that isn't correct, why the General Assembly is free to limit the cases in which detention is available. But even if we were wrong, the best course is simply to clarify that courts retain that power, but the statute otherwise stands. I'll sit down. Thank you very much, Counsel. Counsel for the appellee. Good morning, Madam Chief Justice, Justices of the Supreme Court, Counsel. May it please the Court. My name is Jim Rowe. I'm the State's Attorney for Kankakee County. And my oath in the interest of public safety compels me to contest the Defendant's Act in this regard. So I'm going to stop you right there. Because I do have some questions about standing. In State v. Funches, this Court has said, of a statute only insofar as it adversely impacts his or her own rights. Generally, if there is no constitutional defect in application, that person does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. So I have two questions. First, how does this statute adversely impact the rights of elected State's Attorneys and sheriffs? Your Honor, with regard to standing plaintiffs, sheriffs, State's Attorneys are absolutely proper parties to this litigation. Each of us, each of Your Honors, the sheriff as well, we have all raised our right hand and we have sworn a duty to uphold and defend the Constitution of the State of Illinois. Is that the oath we took? Or was the language prescribed in the statute that we support the Constitution of the United States of Illinois? And isn't that the same oath that every lawyer, every person who comes to be admitted into the Bar of Illinois under the Attorneys Act, takes the same oath? So are you saying that every lawyer in the State of Illinois has standing to challenge a statute they don't like? I'm not arguing that, Your Honor. I'm saying that State's Attorneys and sheriffs stand in a very unique position. For instance, State's Attorneys are the only ones that can go into a courtroom and file a petition under the Defendant's Act to deny bail to someone. Isn't that true now? That is true, Your Honor. Except in this instance, we would be asked to enforce a rule that plaintiffs believe is unconstitutional. I think under Lujan, this Court found that if we are regulated by the Act, we are a proper party to that litigation. And plaintiff State's Attorneys and sheriffs are certainly regulated under that Act. And you are adversely, what is the language of the case, adversely, there's an adverse impact on your rights. Is that right? There absolutely is. That's the circuit court found. State's Attorneys, prosecutors, have an inherent interest in ensuring that we can move cases through the court system, that we can secure a defendant's appearance at trial. The sheriff has an inherent interest. Why don't you continue to have that right? I'm sorry? Why don't you continue to have that right, if you say it's a right? A constitutional right? I'm not sure. But you say you have a right to ensure that defendants appear, to continue to appear. Doesn't that continue under this Act? Well, the Act abolishes the opportunity for a State's Attorney to even request a monetary bail as a sufficient surety. And for the sheriff, the sheriff has to ensure effectively the safety of every law enforcement officer under his charge. This Act requires them to serve, for instance, notice to appear and then a warrant on two occasions. We've now doubled the number of instances where law enforcement is going to come into contact with perhaps a fugitive or a very dangerous individual. So plaintiffs squarely believe that prosecutors and sheriffs have standing to pursue these matters. And we further believe that the Act is unconstitutional. It's quite simple. Counsel, can I ask a question? Yes. Is your argument any different as it relates to the Victim's Rights Clause? It sounds like a standing argument. It absolutely is, Your Honor. Even the defendants have conceded, I believe, page 835 of our appendix in our brief. The Attorney General says in one of the pamphlets that the State's Attorneys are able to not only assert the rights of victims, but in many instances we are required to, and we may be the only party that can assert that victim's rights. So I believe we absolutely have standing to pursue this, not only on behalf of prosecutors and sheriffs, but also on behalf of victims. Doesn't the constitutional amendment, or I think maybe it's the statute, involving crime victims' rights say that the State's Attorney can assert those rights in the case, as in the criminal case pending in the court? It does say that, Judge. We're, of course, here on a deck action. The alternative to this forum and pursuing it in this case would be that we would have to stand by, we would literally have to sit on our hands and wait for a victim's constitutional rights to be violated or a defendant's constitutional rights to be violated. I go to work every single day to prevent that very injury. So, again, plaintiffs believe that we do have standing, we are proper parties. And the simple way for the legislature to accomplish all of these reforms? Take the question, put it on a ballot, propose it to the people, let them vote on it at an election. It quite simply is that easy. And this court, in the Supreme Court Commission report, identified two such examples of where that actually occurred, New Jersey and New Mexico. In both of those states, they accomplished comprehensive and significant bail reform, but they did it through the amendment process. They let the residents of their state have a say. They made sure that they followed the will of the people. And Illinois has done that, too. Defendants talk about six decades. Let's focus on the 80s. In 1982 and in 1986, the Illinois legislature, when they wanted to expand the list of non-bailable offenses, what did they do? They submitted that to a vote of the people. Very significant, because in this instance, this time, they've not only tried to expand the list of non-bailable offenses, but they have all but abolished the condition of monetary bail as a surety, and they tried to do so through mere legislation. They literally tried to drive the reform by following 764 pages of directions at 4 a.m. in the middle of the night, in the dark, with an hour to get there. And unfortunately, they took a few unconstitutional turns along the way. The Illinois Constitution is clear. All persons shall be bailable upon sufficient sureties, with few exceptions. Capital offenses, crimes that are punishable by life, by sentence of life, and nonprobationable felonies. With this act ---- Mr. Rowe, let me ask you the same question I asked your opponent. Isn't public policy ---- is public policy a factor in setting ---- in the legislature setting parameters for pretrial detention? In many instances, Your Honor, yes. In this instance, however, as the Court has said it best, the issue before this Court is not whether this is a good idea or something wise to do. That's not what I'm asking you, sir. I'm asking you whether public policy is a factor in the legislature setting parameters for pretrial detention. It is, so long as that does not result in legislation which conflicts with the Constitution. And they are free to set public policy, but on some occasions, such as in this instance, they have to take that to the vote of the people. Now, even the defendants here have conceded that Article I, Section 9 in its current state, Pre-Defendants Act, grants a judge the authority to set a monetary condition of bond. The Act, by its plain language, by its very title, Abolition of Monetary Bail, has abolished the Court's right, a judge's right, to set a monetary condition of bail. And in doing so, again, they are attempting to forego the will of the voters, and they are attempting to drive this reform through mere legislation. Article I, Section 9 also unambiguously lists the offenses that are non-bailable. Ginsburg, let me ask you another question. Is setting monetary, what's the purpose of setting monetary bail, as you see it? So there's actually, it serves two purposes. One is, of course, the defendant's interest in liberty, but that is balanced with society's interest in securing and ensuring that the defendant does appear for trial and to participate in the court process. Okay. So is money the only way to achieve those ends, in your opinion? I don't believe that the plaintiffs are arguing money is the only way, but certainly in some instances where a judge would find that non-monetary conditions are insufficient, the judge should have that tool that the people of Illinois have put in that judge's toolbox, and that's the ability to impose a monetary condition of bail. As we look at this legislation, in addition to abolishing monetary bail, it has also added certain offenses to the list of non-bailable offenses. Again, in the 1980s, they went through that amendment process. They did it the right way. And then suddenly in 2021, it would appear that the legislature simply just didn't trust the voters. They tried to do it through mere legislation, which this Court has said they cannot do. In Hemingway ----  Your time is up. I apologize. Good morning, Your Honors. Madam Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court. I am Special Assistant State's Attorney Alan Spelberg here on behalf of Willow County State's Attorney James Glasgow. I'll be addressing the separation of powers argument. The circuit court here properly found that the pretrial release provisions of the two acts at issue unduly interfered with the judiciary's inherent authority to set bail. And what counsel said is that this Court has never held that judges have the only gives the authority to deny release in certain circumstances is not correct. Because this Court in Bailey expressly held that trial courts do have the power to set bail, the inherent authority. In Bailey, the legislature adopted a new provision holding certain defendants charged with aggravated stalking without bail. The defendant in that case argued that the statute allowing the no bail hold unduly infringed with the judiciary's inherent authority to set bail. In this court held, it did not. Not because it was just an appropriate determination, but because the statute retained the judge's discretion in all instances. The judge always had the power to impose bail if he sought or pursuant to statute could hold the defendant without bail. That is what is lacking in these provisions which are issued. Because under the provisions that have been adopted in the Safety Act and the follow-up mandatory provisions, every judge in the state of Illinois is prohibited from considering a monetary component of pretrial release. And in fact, in some instances, the judges are prohibited from holding a defendant or from imposing bail even if they believe that there are no set of That is why the trial court found that the statutes violate the separation of powers, and that is why this court should affirm. Because when a legislature adopts a statute which unduly infringes, which prevents the court from exercising its historic and well-settled discretion over matters that go directly to the judge. Yes, Your Honor. Mr. Spalberg, how is this any different, however, than, you know, automatic add-ons for weapons or, you know, 15-year enhancements or minimum mandatories or, you know, automatic sentences that have been imposed by the General Assembly for which we have no discretion? Your Honor, there is a significant difference, and as this court recognized in Taylor, which we cite in our brief, the sentencing authority is a concurrent authority between judges and the legislature. The legislature has the undoubted authority to set and fix punishments for offenses. That's what this court said in Taylor. And then the trial courts have the concurrent authority to impose the particular sentence in the case. So when there is that concurrent authority, that explicit concurrent authority that exists among the different branches, there can be no separation of powers violation because the branches are expected to work together. What's different here, however, is this court recognized in Hemingway, in Taylor, is that the judiciary has an inherent judicial authority to set bail, to deny bail, to control the proceedings before it because it is necessary to maintain the administrative functions of the court to maintain an orderly process of criminal procedure. So that is why Sections 110 in the Code of Criminal Procedure, which in Hemingway this court went through, in Dendron this court looked at as well, that is why those provisions are constitutional to the extent that they have always allowed the judges the discretion to make the ultimate determination. Yes, Your Honor. In your brief at page 40, you say, Determining the appropriate surety to compel the appearance of a defendant is a judicial, not legislative, function. And then you say, The acts unconstitutionally interfere with the court's inherent authority to determine what constitutes a sufficient surety to secure pretrial release. Now, as your opponent has mentioned, but I'd like to direct your attention to 725 ILCS 5-113, legislature for many, many, many years, as the statute's been in the book for a lot of years, that statute is entitled, Determining the Amount of Bail and Conditions of Release. That's the act that then indicates that, says this specifically, In determining the amount of monetary bail or conditions of release, the court shall take into account, and then goes on to set out 36 specific factors that the court must take into account. Is it that statute unconstitutional? Because it interferes with the court's inherent authority to determine sufficient surety? No, Your Honor, it's not. Because while the legislature has listed a series of factors to be considered, Shall be considered. Shall be considered. Yes, Your Honor. The court must take into, shall take into consideration these factors. Isn't that the legislature working with or maybe interfering with the court's? Your Honor, respectfully, I disagree. And the reason why is because even though the legislature has mandated that certain factors should be considered, absolutely. It has not mandated the outcome. It has not mandated the determination that should be made after the consideration of those factors. And I would direct this Court's attention to the case that we cite in our brief, a case that was relied upon by the Supreme Court in this case, but is nowhere cited anywhere in the defendant's brief, which is the Best v. Taylor Machine Works. That case is the critical, seminal case for addressing when the legislature has unduly interfered with an inherent judicial authority. Because in Best, what this Court found was that when the legislature mandates a particular remitter in a tort action, when it holds that as a matter of law a certain amount of damages exceed the public policy as appropriate, that the courts must reduce it. This Court said that that violates the inherent judicial authority to control the cases, to manage the litigation, to determine whether or not as a matter of law a particular reward is excessive, because it takes away that inherent judicial authority. It is controlling the outcome, which is why it's improper. In the example that you give, Your Honor, with the listing of all of the factors that have to be considered, nowhere in those statutes did the legislature mandate a particular outcome. Excuse me. But in the current statutes which are being issued before this Court, the legislature has mandated a particular outcome in any number of situations. Most importantly, the court, the legislature has prohibited judges from considering a monetary component in every single case. And as we know from history, monetary components are an important incentive for ensuring the defendant appears at trial. Gendron especially holds that the purpose of a sufficient surety is to ensure that the defendant will appear at trial, and that by doing so having an economic loss, the risk of economic loss by the defendant, by his family or his friends, is what satisfies a sufficient surety. Then Bailey as well, the right to bail. All of those cases, there is hundreds of years of history in both Illinois and around the country of monetary components. Not that they're mandated, but that they're allowed to be considered by the judges. And so in that instance, that's one way that it affects the trial court's authority in every single scenario at every single point. But even more so under Section 110-6.1, the 90-day provision. If the judge has already ordered the detention of the defendant, has already found that the prosecution has established by clear and convincing evidence that the proof is evident and the presumption is great, and that no set of conditions is available to safely ensure the defendant's return to court or protecting the public, despite all that, once 90 days have passed, if the trial has not yet commenced, the court must release the defendant. No longer has any discretion to retain the defendant, to continue to control what's going on. That cannot stand in the face of Hemingway, which specifically recognized that even where the legislature didn't have the authority to expand the category of non-bailable offenses, even where the statute that was the basis of the case was invalid, as the Court said, the trial court still retained the inherent judicial authority to ensure that the defendant was present and to ensure that, if appropriate, to hold him without bail. And so that's... You're making a facial challenge, right? Yes, Your Honor. And so that means that you have to demonstrate that there is no set of circumstances that this would be constitutional. Have you done that? Well, yes, Your Honor. As the Circuit Court found, because every single bond decision, the judges are prohibited from even considering a monetary component. That affects every single case. But, Your Honor, I would say, as we pointed in our brief, and as the Circuit Court found, in not a single case where this Court engaged in a separation of powers analysis itself, where it looked to whether or not the legislature... Excuse me. I'm sorry. I'm out of time. Thank you. If not in a single case has this Court ever applied that type of analysis, that type of demand, that it be instead invest in LeBron. In all the cases we list, what this Court has simply done for separation of powers analysis is look and see whether or not the judicial authority has been impinged in some significant manner, whether it's been unduly infringed. And as I'm out of time, I would just simply ask this Court to affirm and to allow the parties to go back and begin the reform of the bail process through an appropriate process. Thank you. Thank you very much, Counsel. Thank you. Thank you, Your Honors. I'd like to make a couple of quick points. So plaintiffs talk a lot about the importance of amending the Constitution and the fact that the General Assembly here should have put this to the voters, but the General Assembly was required to put this to the voters and amend the Constitution only if the Constitution currently requires the State to maintain the institution of monetary bail. And for all the reasons we've discussed, it doesn't. As to the separation of powers point, I think Chief Justice Tice's question is exactly right. Plaintiffs' argument, if accepted, would bring down not only the pretrial release  but also the separation of legislative regulation of pretrial release in Illinois that existed for 60 years before the Safety Acts enactment. Plaintiffs have no effective response to that. Mr. Spellberg talked about Bailey, which he says, you know, talks about the Court's inherent authority to require monetary bail. Bailey is not about monetary bail. Bailey is a direct follow-on to Hemingway. It's about detention. The legislature in the statute at issue in Bailey said that courts can detain someone who's been charged with stalking or aggravated stalking. A defendant challenged that statute as inconsistent with the bail clause, and what this court said is no. The statute in question just codifies court's power to detain the person. Bailey is a perfect example of the limited way in which of Hemingway's limited holding. In fact, the statute at issue in Bailey tracks verbatim one of the three exceptions set out in Hemingway for when detention is appropriate. It does not hold that courts have any inherent authority to set monetary bail. Plaintiffs talk a little bit about other separation of powers cases, kind of outside the criminal procedure kind of context. I heard a discussion about the Best case. You know, we talk about this a little bit in the briefs. There are a lot of separation of powers cases out there, and what the court does in each of those cases is kind of looks to the historical tradition supporting the asserted judicial power and the historical tradition on the other side of legislative regulation. In Best, the issue is that there was no history of legislative regulation of what the court termed a legislative remitter. It was a kind of new thing that was being brought in to restrain court's power. Here we have the opposite. We have 60 years at the minimum of legislative regulation of bail. You know, plaintiffs describe Best as, you know, as sort of involving a statute that mandated a particular outcome, which they say is just like the detention provisions. But sentencing provisions, as Justice O'Brien mentioned, operate the exact same way. Sentencing mandatory minimum provisions mandate a particular outcome in a particular case, and they can't be explained simply by saying that the legislature in the sentencing context has some sort of concurrent constitutional authority to make public policy determinations, because this court has used that exact same language in Walker to describe legislative authority over the Code of Criminal Procedure and the Code of Civil Procedure. Those are contexts that are directly analogous to the sentencing context in that in each case, the legislature is charged with making big decisions about the way that things should operate in the state. And that is the kind of fundamental point here. The legislature has made exactly that decision about the way that people should be treated while they are pending trial and presumed innocent. There is nothing in the Constitution that prohibits that decision. Plaintiffs talk about the 90-day provision. This is Section 6.1. No. This is Section — I'm losing my notes. The 90-day provision, regardless of where it's enumerated in the statute, is, as we describe, a longstanding feature of Illinois law. It was enacted in 1988. It had exactly the — essentially the same language then as it does now. It requires a court to release someone who is held without — held pretrial after 90 days. What the Safety Act does is it gives the State and courts more power, not less. The Safety Act says that courts can continue that 90 — can toll that 90-day requirement if the State seeks a continuance that is supported by good cause. That is a provision that was not in pre-Safety Act law, and it certainly accounts for the issues raised in Plaintiff's brief about the delays associated with DNA testing, which I take to be their primary complaint in this area. So again, if plaintiffs are right that provisions like that violate separation of powers principles, suddenly we're not just talking about the Safety Act. We're talking about six decades of legislative regulation, of pretrial practices that are all called into question by plaintiffs' expansive reading of judicial power in this area. Finally, I want to talk briefly about the sort of facial versus as applied issue that Justice Holderwhite raised. You know, I think that's right, Your Honor. I mean, at the very least, plaintiffs have not come anywhere close to meeting their burden of showing that no set of circumstances exists under which the detention provisions are valid. You know, the detention provisions are consistent with Hemingway. They are consistent with the inherent judicial power to detain a criminal defendant pending trial in almost every case in which that power would be used. They permit detention on either flight risk or public safety grounds of anyone charged with virtually any serious felony in the state. That means they are consistent with the inherent judicial power described in Hemingway in most of the actual cases in which the state will seek to detain someone pending trial. It would grant plaintiffs an extraordinary windfall to find the statute facially unconstitutional and strike it down as to all parties in its entirety just because there might be some hypothetical case in which a court would want to detain a low-level misdemeanant and lack statutory authority to do so. So if the court, for whatever reason, finds that there is some, you know, reason to hesitate and say that the statute is not sort of facially constitutional in all its applications, it should at the very least say that plaintiffs simply have not met their burden of satisfying the sort of demanding standard of showing that no set of circumstances exists under which the statute is valid. You know, plaintiffs point to a handful of separation of powers cases in which the court could have kind of more fully articulated its reasoning or perhaps even applied the ordinary standard for facial claims, but they admit that none of those cases establishes the exception that they are seeking. And in most of these cases, the issue simply wasn't raised. And so there's no reason to read these cases' silence as kind of a precedent that establishes a separation of powers exception to the ordinary rule. If the Court has further questions, I would be delighted to address them. If not, we would ask that the Court reverse the circuit court's decision, finding the free trial release provisions unconstitutional, and allow the Safety Act to take effect. Thank you. Thank you very much. This case, number 129248, Rowe v. Raul, is taken under advisement as Agenda Number 1.